**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**MICHAEL ANDERSON,**
    **Petitioner,**

**v.**                                                                  **No.  5:04cv164/SPM/MD**

**JAMES V. CROSBY,**
    **Respondent.**
_____

## REPORT AND RECOMMENDATION

**Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 11) to which petitioner has replied (doc. 13).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY

**The undisputed facts show that on January 18, 2002 petitioner, a state prisoner, was working on the Field Force Squad at the Apalachee Correctional Institution, when the supervising correctional officer (Officer Johnson) told him to carry a water cooler up a hill behind the squad office.  Petitioner refused.  The same order was given two more times, and each time petitioner refused.  He received a disciplinary report, was found guilty after a hearing of disobeying a verbal order in**

violation of prison regulations, and was given 30 days disciplinary confinement and forfeited 60 days gain time.

Petitioner exhausted the Department of Corrections (DOC) administrative grievance process without success. He then challenged his conviction in the Circuit Court of Leon County, Florida. The court denied relief without a hearing. Petitioner's subsequent petition for writ of certiorari to the First District Court of Appeal of Florida was denied. Respondent concedes that petitioner has exhausted his state remedies.

## SECTION 2254 REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the state court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely: "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the state court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). If the state court decision is found in either respect to be contrary, the district

court must independently consider the merits of the petitioner's claim. If on the other hand, the state court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. The state court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the state court adjudication results in a "satisfactory conclusion." *Id.* 529 U.S. at 410-12, 120 S.Ct. at 1522-23.

Only if the federal habeas court finds the state court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum). When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that

the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson,* 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

## PETITIONER'S CLAIM FOR RELIEF

In the state court petitioner contended that "[t]he D.O.C. has violated Anderson's Due Process protections.  Anderson asserts that he did not have adequate notice that he was violating a rule, and that he presumed his conduct was allowed." (Doc. 11, exh. 1, p. 9).[1]  The gist of petitioner's argument was three-fold: (1) that he was not provided "fair notice" of the rule because he was neither provided a written copy of the prison rules nor given a verbal explanation of them; (2) that the obey-all-orders rule was vague as applied to him because it did not provide him "fair notice" that his conduct was prohibited; (3) that because the obey-all-orders rule did not completely describe the conduct it proscribed, due process required that Officer Johnson give petitioner advance notice that he would be sanctioned if he failed to comply with the verbal order, and a chance to conform his conduct. (Exh. 1, pp. 9-18).  The state court denied petitioner relief in a written order as follows:

> THIS CAUSE came before the Court for consideration pursuant to Petitioner's Petition for Writ of Mandamus.  Having considered the petition, response, the reply, and being fully advised in the premises, the Court finds that the petition should be denied.
> 
>     Petitioner seeks an order from this Court expunging a disciplinary report and restoring lost gain time that resulted from that disciplinary report.  Petitioner argues that he did not know that he was required to perform a task generally assigned to another.  Petitioner further argues that absent advance notice of the consequences of his disobedience, he cannot be charged with disobeying an order.  The court finds this argument disingenuous and can find no legal support for Petitioner's claim.
> 
>     The Court further finds that Petitioner was afforded the procedural due process due him under the Fourteenth Amendment to the United

---

[1] Hereafter all references to exhibits will be to doc. 11 unless otherwise noted.

*Case No: 5:04cv164/SPM/MD*

States Constitution in accordance with Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974) and Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 105 S.Ct. 2768 (1985). (Exh. 7).

A.   Clearly Established Supreme Court Law.

It is clearly established that due process requires prior notice, or "fair warning," of proscribed conduct before a sanction may be imposed. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Based on this principle, several courts have held that before a prisoner can be charged with violating prison regulations, the prisoner must have notice of those regulations. *See, e.g., Reeves v. Pettcox*, 19 F.3d 1061 (5th Cir. 1994) (a prisoner is entitled to fair warning, or a fair opportunity to know, that his conduct is prohibited before being punished for that conduct); *Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993) ("It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed."); *Forbes v. Trigg*, 976 F.2d 308, 314 (7th Cir. 1992) ("Due process requires that inmates receive fair notice of a rule before they can be sanctioned for its violation."); *Frazier v. Coughlin*, 850 F.2d 129, 130 (2nd Cir. 1988) (if prisoner can prove that he lacked notice of the rules of which he was charged with violating, he may have a valid due process claim); *Robles v. Coughlin*, 725 F.2d 12, 16 (2nd Cir. 1983) (dicta) ("[C]onsideration should be accorded those cases which hold that the failure to provide notice of prison rules to inmates is a violation of due process."); *Radi v. McCormick*, 978 F.2d 715, at * 1 (9th Cir. 1992) (Table, Text in Westlaw) ("[B]efore a prisoner can be charged with violating prison rules, the prisoner must have notice of those rules."); *Landman v. Royster*, 333 F.Supp. 621, 654-656 (E.D. Va. 1971) (In the prison context it is constitutionally required by the due process clause that the rules specifying prohibited conduct be written with reasonable specificity so that the inmate has fair warning to conform; such fair warning requires that the rules must somehow be communicated to those so required to conform).

Another aspect of the fair notice requirement is the vagueness doctrine. This doctrine protects individuals from laws lacking sufficient clarity of purpose or

precision in drafting. *See Grayned, supra*; *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217-18, 95 S.Ct. 2268, 2276-77, 45 L.Ed.2d 125 (1975). The standard for evaluating vagueness was enunciated by the *Grayned* court as follows:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Id.*, 408 U.S. at 108-09, 92 S.Ct. at 2298 (footnotes omitted). The Court later cautioned in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), that these standards "should not . . . be mechanically applied. . . . The degree of vagueness that the Constitution tolerates--as well as the relative importance of fair notice and fair enforcement--depends in part on the nature of the enactment." *Id.*, 455 U.S. at 498, 102 S.Ct. at 1193.

The Supreme Court has not set forth a specific approach for evaluating challenges to prison regulations on vagueness grounds. The applicable Supreme Court law pertaining to the degree of vagueness tolerated by the Constitution in criminal statutes is well settled:

> That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) (The applicable standard when a criminal statute is being challenged as unconstitutionally vague is *Connally*). Vagueness may invalidate a criminal law for

either of two independent reasons.  First, it may fail to provide the type the kind of notice that will enable ordinary people to know what it prohibits.  Second it may authorize or encourage arbitrary and discriminatory enforcement.  *City of Chicago v. Morales*, 527 U.S. 4156, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67 (1999).

Some courts have applied this same standard to vagueness challenges to prison regulations.  *See, e.g., Chatin v. Coombe*, 186 F.3d 82, 89 (2nd Cir. 1999) (applying same vagueness analysis applicable to criminal statutes); *Newell v. Sauser*, 79 F.3d 115, 117-18 (9th Cir. 1996) (citing cases);  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2nd Cir. 1995) (applying *Connally* standard to vagueness challenge to prison regulation); *Rios v. Lane*, 812 F.2d 1032, 1038 (7th Cir.), *cert. denied*, 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987) (applying *Connally* and noting further that "where prohibited conduct does not carry with it its own indicia of wrongdoing the need for clearly drawn prison regulations is particularly acute"); *Falkiewicz v. Grayson*, 110 Fed. Appx. 491, 2004 WL 1888872, at * 2 (6th Cir. 2004) (approving district court's application of *City of Chicago*); *Sands v. Wainwright*, 357 F.Supp. 1062 (M.D. Fla.), *rev'd on other grounds*, 491 F.2d 417 (5th Cir. 1973); *Aiello v. Litscher*, 104 F.Supp.2d 1068, 1082 (W.D. Wis. 2000) (applying *City of Chicago* to vagueness challenge to prison regulation); *Arey v. Robinson*, 819 F.Supp. 478 (D. Md. 1992) (applying *Connally* standard).  However, other courts have applied a less rigorous application of due process guarantees in evaluating prison regulations. *See, e.g., Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir. 1984) (citing *Grayned* and *Lanzetta*, but implying that prison regulations are subject to a less strict vagueness test);[2] *Meyers v. Aldredge*, 492 F.2d 296, 310 (3rd Cir. 1974) (adopting a more relaxed

---

[2]The Fifth Circuit noted:

> We are mindful that this case arose in a prison, where problems of administration in general and security in particular range from difficult to nearly impossible. "[O]ne cannot automatically apply procedural rules designed for free citizens in an open society, . . . to the very different situation presented" by a prison disciplinary proceeding.  *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974).  Balanced against the needs of the institution, however, is the fundamental requirement that persons be able somehow to avoid conduct that will lead to severe sanction.  Because "legalistic wrangling" over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the interpretation of those rules by prison authorities

vagueness standard applicable to prison regulations and holding that vagueness principles must be applied in light of the legitimate needs of prison administration; "Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions."); *Wolfel v. Morris*, 972 F.2d 712, 714 (6th Cir. 1992) ("[T]he degree of specificity required in prison regulations is not the same as that required in other circumstances. . . ."); *El-Amin v. Tirey*, 817 F.Supp. 694, (W.D. Tenn. 1993) (while due process generally prohibits excessively vague laws, the degree of specificity required when courts analyze whether prison regulations comply with due process is not the same as that required for those laws applicable to free citizens).  The court need not resolve the issue here, because even applying the standard more favorable to petitioner--the standard requiring greater specificity--petitioner is not entitled to relief.

B.   Federal Review of State Court Decision.

The undersigned is not confident that the state court applied clearly established Supreme Court law. *Wolff* and *Hill*, cited by the state court, dealt with the procedural due process rights that must be afforded a prisoner at a disciplinary hearing.  That is not what petitioner complains of here.[3]  He contends that he was never informed that it was a rules violation to disobey the particular order given to him. He says that he was assigned the job as a field worker, not a water carrier, that he was never told that he could be ordered to do the assigned task of a water carrier, and that he therefore believed he had the right to ignore an order to do a water

---

"unless fair notice was clearly lacking." *E.g., Hadden v. Howard*, 713 F.2d 1003, 1008 (3rd Cir. 1983) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 311 (3rd Cir. 1974)).  As we have explained, fair notice of a rule against petitions was quite clearly lacking at Texarkana--there simply was no such rule. . . . Basic due process was violated by the . . . imposition of severe punishment for conduct no inmate could have known was against prison rules.

*Adams*, 729 F.2d at 369-70.

[3] *See* Doc. 13, p. 13 ("[Petitioner] did not set forth an argument premised on [*Wolff* or *Hill* in the state court].")

carrier's job. The thrust of his position here and in the state court is that he suffered a due process violation by the Department of Corrections' (DOC) failure to inform him that he had to obey orders, and by its failure to warn of the consequences once he disobeyed the first time. A thorough reading of the state court's decision does not give this court any assurance that it applied federal law at all.[4] "[W]hen there is grave doubt about whether the state court applied the correct rule of governing federal law, § 2254(d)(1) does not apply. *Romine v. Head*, 253 F.3d 1349, 1365 (11th Cir. 2001) (holding that *de novo* review was appropriate under circumstances similar to these). Therefore, this court must consider the issue *de novo*.

In his habeas petition, petitioner makes essentially the same three core arguments he made to the state court: 1) that he was not informed of the regulation that resulted in disciplinary action against him; 2) that even if he had been so informed, the regulation is unconstitutionally vague as applied to him because the prison rules do not give adequate notice that an inmate can be sanctioned for refusing an order to do another inmate's work; and 3) that because he did not have adequate notice that he could be sanctioned for refusing to obey the order, once he refused, the official who gave the order had to warn him of the consequences of that refusal and then give him the opportunity to conform. These will be discussed on that order.

1. <u>No notice of regulation.</u>

The DOC regulations at Ch. 33, Florida Administrative Code contain a section entitled "Rules of Prohibited Conduct and Penalties for Infractions," Fla.Admin.Code § 33-601.314. Subsection 6-1 of that section provides that an inmate can be punished for "[d]isobeying verbal or written order – any order given to an inmate or inmates by a staff member or other authorized person." It is this regulation that petitioner says was never made known to him, and is constitutionally infirm.

---

[4] Respondent's brief has been of no assistance to this court. It argues at length the irrelevant facts and law in the light of *Wolff* and *Hill*, and then concludes that petitioner's argument that he was unaware of the consequences of disobeying an order "is entirely disingenuous." (Doc. 11, p. 9). Respondent then goes on to say that ignorance of the law is no excuse, without giving consideration to prison conditions and federal law on that issue.

Case No: 5:04cv164/SPM/MD

Petitioner recounts at length his various transfers and arrivals at prison facilities during the six or more years he was an inmate before this incident, and states that he never received a rule book. He further states that in all the orientations he received, many of which were nothing more than cursory, the rules were never explained to him, nor was he told that he could not disobey an order to do a task normally performed by other inmates on his work assignment (doc. 1, pp. 4-5). The state court considered this part of petitioner's claim only in passing, noting that his argument was "disingenuous," and that everyone is presumed to know the law. Here the state court failed to apply appropriate federal law, because in the unique setting of a prison, inmates are not necessarily presumed to know the regulations. "[I]t is a violation of due process to punish inmates for acts which they could not have known were prohibited." *Reeves v. Pettcox*, 19 F.3d 1061 (5th Cir. 1994) (holding that solitary confinement inmate was denied due process as he could not have known that his conduct was prohibited before he was charged with the disciplinary offense; inmates in solitary confinement were not given copies of the rules, nor were they given a meaningful opportunity to read the inter-office communications posted on the solitary confinement bulletin board); *see also* cases cited *supra*.[5]

The question here, however, is not whether petitioner actually knew of the regulation. Rather, this court must determine whether petitioner had notice, or a fair opportunity to know, of the prohibition against disobeying orders. Petitioner admits that the regulations were available in prison law libraries, but qualifies this by saying

---

[5] This court has not overlooked the first part of the state court's rationale however - that petitioner's argument was disingenuous, which respondent contends is a factual finding deserving deference. Petitioner argues that this statement has no force because it was neither a factual nor a legal determination. "Disingenuous" means "lacking in candor or frankness, insincere, morally fraudulent." OXFORD ENGLISH DICTIONARY (2nd ed.). "Frankness" means not practicing concealment; ingenuous, open, sincere. *Id.* "Insincere" means not genuine; assuming a false guise in speech or conduct; dissembling, disingenuous. *Id.* All these definitions point to a specific factual determination by the state court - that petitioner was not truthful in advancing this argument. However, whether the court meant petitioner was untruthful when he claimed not to know of the above-quoted regulation, or whether he was untruthful when he argued that he genuinely believed that this was a valid argument, is unclear. Given that ambiguity, this court is not required to give deference to the state court's finding concerning disingenuousness.

*Case No: 5:04cv164/SPM/MD*

that library use is restricted, without a legal deadline, to one hour per day (doc. 1, p. 5). He further argues that the regulations comprise more than 320 pages and that it would take a college educated person three full days to read them, and that the average educational level of state prisoners is seventh grade.

This argument is wide of the mark. Petitioner had sufficient access to the DOC regulations. The record need not show that petitioner actually knew of the regulation, only that the DOC made it available to him. *See, e.g., Radi v. McCormick*, 978 F.2d 715, at *1 (9th Cir. 1992) (Table, Text in Westlaw) (prison officials sufficiently met the due process requirement that prisoner receive notice of prison rules before charging him with disciplinary violations; although prisoner was not provided an individual copy of the rules, prisoners were notified of rules and regulations by posting and otherwise making available the rules).[6] Petitioner concedes that he has been in DOC custody since 1995. At the time of this incident he had been in custody for more than six years, which gave him ample time to use the law library, even if access was limited to one hour per day.

As to the education level of this petitioner or of prisoners generally, federal courts have required that prison regulations be available, not that they be written so as to be understandable by any particular level of education. The Supreme Court spoke in terms of giving a "person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned*, 408 U.S. at 109, 92 S.Ct. at 2298. The section of the DOC regulations dealing with inmates' prohibited conduct comprises only four pages, and could be found and read in an hour or less. As to petitioner's level of education, what is prohibited by the specific regulation here is disobeying *any* written or verbal order given to an inmate by a staff member. There is nothing unclear or ambiguous about this simple prohibition, so petitioner's argument that he would not have understood the regulation if he had known about it is meritless. The regulation at issue was available and was easily understood, and petitioner's

---

[6] The other methods used to notify prisoners of the rules included inmate orientation, rule books available in the prison library and guard offices, the orientation handbook, and the prison newspaper.

*Case No: 5:04cv164/SPM/MD*

claim that he did not have notice that it was an infraction to disobey a verbal order fails.

### 2. Unconstitutionally vague.

Petitioner next argues that the obey-all-orders rule is unconstitutionally vague. He maintains that the rule "is not very specific and allows the Department to punish inmates on account of conduct that is not completely described." (Doc. 13, pp. 8-9). He reasons that the regulation prohibits disobeying *any* order, which he says could include an order to do whatever a guard might fancy.

The vagueness doctrine only requires that the rule give fair warning of prohibited conduct. *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). Here, in the plainest language, the prison rule warns that failing to obey any verbal or written order of a staff member is prohibited. There is nothing vague about a regulation requiring an inmate to obey the orders of a corrections officer. A reasonable person reading the rule would have fair warning that failing to follow an order to perform a work-related task while on work assignment violates this rule.[7] Petitioner's strained interpretation, that he believed he could refuse an order when that order directed him to perform a task normally carried out by other inmates on his work assignment, does not withstand scrutiny because petitioner's subjective beliefs are irrelevant to the due process inquiry. The fair notice requirement is determined by objective standards. *See United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954) ("The constitutional requirement of definiteness is violated by a criminal statute that fails to give *a person of ordinary intelligence* fair notice that his contemplated conduct is forbidden by the statute.") (emphasis added).

Petitioner further contends he lacked fair warning that his conduct was prohibited because identical conduct was previously tolerated. This argument must

---

[7] DOC regulations also contain a provision governing inmate work programs which provides additional standards of conduct for inmates while they are on their work assignments. The provision provides, in relevant part, as follows: "All inmates shall submit to assignment schedules of the institution, <u>and shall carry out such instructions as shall be given by department staff</u> and non-department staff authorized to supervise inmates." Fla.Admin.Code § 33-601.201(3) (emphasis added).

*Case No: 5:04cv164/SPM/MD*

fail.  In support of his position, petitioner states that on one occasion he observed another inmate refuse an order to sweep the floor without sanction because the inmate's work assignment was not that of "houseman."  This is distinguishable from petitioner's situation because petitioner concedes that Officer Johnson's order was given <u>while petitioner was on his work assignment on the Field Force Squad</u>, and that the instruction was to perform a task normally performed by members of that squad (doc. 1, p. 6).  Petitioner cannot justifiably analogize his situation to one involving a work assignment task completely unrelated to, and outside of, the inmate's present work assignment, especially in light of the prison rule requiring inmates on work assignment to "carry out such instruction as shall be given by department staff," (*see supra* note 7).

The question now turns to whether the regulation fits the second prong of the *City of Chicago* standard - that it fails to set out explicit standards for those who must apply it and thereby authorizes arbitrary behavior.  At first blush it would appear that this is the case.  In *City of Chicago*, an ordinance gave police the power to tell persons to disperse when gang members loitered with each other or with other persons in a public place.  The court held that the ordinance failed for vagueness, reasoning that it reached innocent conduct - a law-abiding citizen talking to a gang member - and gave the police too much discretion in determining whether a person was loitering, which the ordinance defined as remaining in one place with no apparent purpose.  Without any guidelines on how, for example, the police might determine whether a person had an "apparent purpose," no person could reasonably know whether he was violating the ordinance.

Petitioner here argues that there is no limit on what a guard might order an inmate to do - in petitioner's hypothetical "fight that prisoner behind you," (doc. 1, p. 6).  In theory, when read literally the regulations appear to place no limits on what a corrections officer might tell a prisoner to do.  However, where a challenged statute or regulation clearly defines an offense, "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise."

*United States v. Harriss*, 347 U.S. at 618. Rather, the court must examine the regulation to determine whether there is a reasonable construction that will result in a finding of constitutionality. *United States v. Cassiagnol*, 420 F.2d 868 (4th Cir. 1970).

It is not difficult to imagine instances in which the regulation at issue here might be theoretically vague where, as petitioner suggests, a guard orders a prisoner to commit a crime. Such an order would undoubtedly be unlawful, and even though the subject regulation requires an inmate to obey *any* order, no tribunal could legally fault a prisoner for disobeying a clearly unlawful one. A reasonable interpretation of this constitutionally valid regulation would require prisoners to obey lawful orders given to them by appropriate personnel. Moreover, "an inmate may not refuse a direct order merely because he disagrees with a guard's interpretation of a prison regulation." *Siggers v. Renner*, 37 Fed. Appx. 138, 139 (6th Cir. 2002) (unpublished opinion). The vagueness of which petitioner complains is neither substantial nor real in relation to its plainly legitimate sweep. The obey-all-orders regulation provides an ascertainable standard to department employees and does not violate the due process prohibition against vagueness.[8]

---

[8]At times, petitioner refers to the prison regulation as "vague and/or overbroad." However, in neither his petition nor his reply does petitioner actually present an overbreadth challenge. "The overbreadth and vagueness doctrines are related yet distinct." *American Booksellers v. Webb*, 919 F.2d 1493, 1505 (11th Cir. 1990). As the court in *American Booksellers* explained:

> The vagueness doctrine focuses on whether the law in question affords a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108-109, 92 S.Ct. at 2298-99. "Overbroad legislation need not be vague, indeed it may be too clear; its constitutional infirmity is that it sweeps protected activity within its proscription." *M.S. News Co.* [*v. Casado*], 721 F.2d [1281,] 1287 [(10th Cir. 1983)].

*Id.*, at 1505; *see also* BLACK'S LAW DICTIONARY 1103 (6th ed. 1990) (Defining overbreadth doctrine as deriving from the First Amendment, and as "serv[ing] to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally protected rights of free speech, press or assembly. . . . The doctrine requires that a statute be invalidated if it is fairly capable of being applied to punish people for constitutionally protected speech or conduct."). In the instant case, petitioner does not contend the obey-all-orders rule inhibits or impermissibly restricts the exercise of his constitutionally protected rights.

### 3. Right to a warning.

Finally, petitioner argues that when he refused to obey the first verbal order, he should not have been punished unless he was counseled on the possible consequences of refusing, and given the opportunity to conform. Petitioner bases his argument on *Meis v. Gunter*, 906 F.2d 364 (8th Cir. 1990). In *Mies* a state prisoner challenged his lack of access to administrative regulations, operational memoranda, and other documents containing inmates' standards of conduct. The lower court granted relief, but the appellate court reversed. It noted that it had no quarrel with the lower court's finding that an inmate is entitled to advance notice of a possible infraction. "If, for example, an O[perational] M[emorandum] makes it an offense for an inmate to have in his cell more than three books, and if an inmate has four books in his cell, and if an officer, discovering the four books, institutes disciplinary proceedings against the inmate without first informing him of the three-book limit and giving him the chance to get rid of the fourth book, obvious problems of due process arise." 906 F.2d at 367. The court also discussed hypothetical facts similar to those raised in the instant motion concerning officers' verbal orders to inmates. It noted with approval the lower court's finding that under a similar obey-all-orders rule, it would be possible for an inmate to be punished for disobeying an order to make up his bed, when the regulations in question did not contain any language requiring that beds be made. *Id*. at 366. This, says petitioner, is on all fours with his case. He was punished for disobeying an order when the regulations did not say that he could be ordered to do a task normally performed by other inmates on his work assignment.

There is a fundamental flaw in petitioner's reliance on *Meis*. In that case, the Eighth Circuit emphasized that there had been no suggestion that the obey-all-orders rule was invalid. *Id.* at 367. Thus, the court did not reach the vagueness issue. The court went on to find that the propositions discussed above were "complete abstraction[s]," because nothing of the kind had ever happened to Inmate Meis. *Id.* at 367. In the instances where Inmate Meis had been disciplined for failing to obey a verbal order, "he was given clear advance notice and at least one chance

Case 5:04-cv-00164-RS-MD   Document 16   Filed 03/25/05   Page 17 of 18

Page 17 of 18

to conform his conduct to the order before any disciplinary proceeding was commenced." *Id.* The Eighth Circuit concluded that Inmate Meis lacked standing to bring a due process claim based on lack of access to all departmental documents, because he could not show that he had ever been injured by the lack of such access.

Petitioner urges this court to construe the Eighth Circuit's comments and discussion of the hypothetical as holding that "because of the fact that an inmate can be punished for conduct not expressly described, due process requires that when an officer gives a verbal order that is not a written rule, . . . the officer is then required to give advance notice and at least one chance to conform his conduct to the order before any disciplinary proceeding is commenced," (doc. 13, p. 10). That was not the holding of the *Meis* Court. Moreover, the hypothetical scenario discussed there, where the prisoner was punished for having four books when a written rule made it an offense for an inmate to have more than three, presupposed that the prisoner had no opportunity to know of the three-book limit. For that reason, the court surmised hypothetically that the guard ought to give the prisoner a warning. That is not the case here. As shown above, petitioner had notice of the written regulation requiring him to obey orders, whether he admits it or not. He also had notice of the written standards of conduct (contained in the prison regulations under "Inmate Work Program") requiring him to carry out such instructions as were given by department staff and others authorized to supervise him.

As to the DOC regulations, petitioner cites to a prison Post Order, which provides that if an inmate refuses to work, counseling should first be employed in an attempt to resolve the situation (doc. 13, p. 12). That may be what the DOC recommends, but that is a matter between the DOC and the corrections officer, and it is purely a state matter. "Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983)(citations omitted). Federal habeas relief is available to correct only constitutional injury. Title 28 U. S. C. § 2254(a); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Engle v. Isaac*, 456 U.S.

107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). There is no constitutional requirement for the counseling recommended by the Post Order, and the fact that the recommendation exists does not raise it to that level.

## CONCLUSION

Petitioner was on notice that he was required to obey orders; the regulation setting out that requirement was not unconstitutionally vague; and petitioner had fair warning that his refusal to obey the order could result in punishment. He is not entitled to habeas relief in this court.

Accordingly, it is respectfully RECOMMENDED that the petition for writ of habeas corpus (doc. 1), challenging disciplinary punishment arising out of petitioner's acts on January 18, 2002 be DENIED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 25th day of March, 2005.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

**Any objections to these findings and recommendations must be filed within ten days after being served a copy hereof. A copy of any objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 701 (11th Cir. 1988).**

*Case No: 5:04cv164/SPM/MD*